UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

CHRISTOPHER CRAFT,

                      Defendant.
-----------------------------------------------------------X

**OPINION & ORDER**

23-CR-00178 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Christopher Craft ("Craft" or "Defendant") stands charged in a two-count indictment for unlawful possession of a firearm and ammunition, after a felony conviction punishable by imprisonment for a period in excess of one year, in violation of 18 U.S.C. §922(g)(1). (Doc. 5). Pending before the Court is: (i) Defendant's motion to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(1); and (ii) Defendant's motion to suppress evidence under Federal Rule of Criminal Procedure 12(b)(3)(C).

    Defendant filed his motion papers on July 31, 2023 (Doc. 19, "Def. Br."), the Government filed its opposition on August 22, 2023 (Doc. 25, "Gov. Br."), and the motions were fully briefed with the filing of Defendant's reply on September 11, 2023 (Doc. 31, "Reply"). The Court held a status conference on September 20, 2023, and heard argument from the parties on the extant motions. (*See* September 20, 2023 Min. Entry).

    Based upon the parties' submissions, the oral argument heard from the parties, and for the reasons set forth below, Defendant's motions are DENIED.

**BACKGROUND**

On or about April 17, 2022, the New York State Police ("NYSP") received a report regarding a hit-and-run car collision involving a red Chevrolet on State Route 9 in Rhinebeck, New York. (Doc. 2, "Compl." ¶ 3(a)).[1] The complainant reported seeing an individual at the scene exit a residence with a shotgun in hand, and stated that the individual holding the shotgun did not point it at anyone or threaten to use it. (*Id.*). NYSP troopers arrived at the reported location and spoke with Craft who confirmed that he had been holding a shotgun that night. (*Id.* ¶ 3(b); Gov't Br., Ex. C at 20:34:09-17).

At some point after the April 17, 2022 interaction, NYSP troopers determined that Craft had previously been convicted of a felony and could not lawfully possess a firearm under New York law. (Compl. ¶ 3(c); Gov't Br., Ex. D). On or about April 20, 2022, NYSP officers on patrol observed Craft operating a blue Ford van on State Route 9 in Rhinebeck, New York, which had a piece of paper in the license plate holder that read "SOVEREIGN CITIZEN USC ART. SEC. 242." (Compl. ¶ 3(d)). The NYSP officers reportedly stopped Craft's vehicle because it did not have valid license plates. (*Id.*). Craft also refused to produce a driver's license when asked. (Gov't Br., Ex. G at 11:49:33). At some point during the interaction, a NYSP trooper reminded Craft of their April 17th encounter where Craft said that he had possessed a shotgun. (Gov't Br., Ex. G at 11:51:26-34). The Complaint details, and video evidence submitted by the parties confirms, that Craft repeatedly refused the NYSP troopers' orders to exit his vehicle. (Compl. ¶ 3(f); *see generally* Gov't Br., Ex. G). After more than twenty minutes, the NYSP officers broke the car window and removed Craft from the vehicle. (Gov't Br., Ex. G at 12:10:43-12:11:26). Craft kicked the vehicle while being placed in handcuffs and identified the location of the shotgun in the blue

---

[1] The Complaint, originally filed under seal, was unsealed on March 25, 2023.

van. (*Id*. at 12:11:32-34). Thereafter, an inventory search of Craft's blue Ford van was conducted prior to its being impounded. (Compl. ¶ 3(h)). A Mossberg 500A 12-guage shotgun, s/n K898738 was recovered in the search of the vehicle. (*Id*.).

Sometime in February 2023, Craft's situation came to the attention of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). (Doc. 33 at 6-7). The ATF learned that Craft had previously been convicted on several counts in Dutchess County Court which resulted in a sentence of seven years' imprisonment for his burglary conviction, as well as additional concurrent terms of imprisonment for the other convictions. (*Id*. at 7; Compl. ¶¶ 5-6). A complaint was signed in late February 2023, and an arrest warrant was issued charging Craft with illegally possessing a firearm on or about April 20, 2022. (*Id*. ¶ 1). On March 24, 2023 the ATF, NYSP, and the United States Marshal's Service ("USMS") executed the arrest warrant and took Craft into custody near the same blue Ford van. (Doc. 33 at 7). During their security sweep, and in plain view, an ATF officer and USMS officer observed four shotgun rounds in the front compartment of the van near the driver's seat and recovered them. (*Id*.). The Grand Jury returned a two-count indictment on April 4, 2023. (Doc. 5). Accordingly, Craft is charged in the instant Indictment with two counts for unlawful possession of a firearm and possession of ammunition after a felony conviction in violation of 18 U.S.C. §922(g)(1).

## ANALYSIS

I.   Motion to Dismiss

Defendant moves pursuant to Fed. R. Crim. P. 12(b)(1) to dismiss the indictment on the grounds that 18 U.S.C. 922(g)(1) is unconstitutional. (Def. Br. at 3). Before trial, a defendant 'may raise by . . . motion any defense, objection, or request that the court can determine without a trial on the merits,' including a motion alleging 'a defect in the indictment.'" *United States v. Aiyer*, 33

3

F.4th 97, 116 (2d Cir. 2022) (quoting Fed. R. Crim. P. 12(b)(1)(B)); *see also Jarry v. Southington Bd. of Educ.*, No. 08-CV-00954, 2010 WL 2710448, at *1 (D. Conn. July 7, 2010) ("A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) 'challenges the court's . . . constitutional power to adjudicate the case before it.'"). Defendant brings both a facial and as-applied challenge to Section 922(g)(1). The Court analyzes each *seriatim*.

    A.  <u>Facial Challenge to Section 922(g)(1)</u>

Turning first to the facial challenge, Defendant argues that Section 922(g)(1) does not pass constitutional muster in the wake of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

The Second Amendment to the Constitution of the United States provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010) that "the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense," and held later in *Bruen* that this protection includes the "right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2112.

As set forth in *Bruen*, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2127, 2129-30. Accordingly, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. Defendant argues that the Government has not established

the requisite historical tradition at the time the Second Amendment was ratified to justify the preclusion of felons from possessing firearms.[2]

Well ahead of *Bruen*, the Second Circuit in *Bogle* determined that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." *United States v. Bogle*, 717 F.3d 281, 281-82 & n.1 (2d Cir. 2013). *Bogle* remains controlling precedent in this Circuit, given that it relied on *Heller* and *McDonald,* cases that were later reaffirmed by *Bruen*.[3] *See Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995) ("A decision of a panel of this Court is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court."); *see also Bruen*, 142 S. Ct. at 2127. Defendants cite to no Second Circuit precedent suggesting otherwise.

---

[2] The Court recognizes that certain courts outside the Second Circuit have ruled that the government failed to meet its burden under *Bruen* to show that Section 922(g)(1) is constitutional, albeit under different circumstances. *See e.g.*, *United States v. Bullock*, No. 18-CR-00165, 2023 WL 4232309, at *31 (S.D. Miss. June 28, 2023); *see also United States v. Forbis*, No. 23-CR-00133, 2023 WL 5971142, at *6 (N.D. Okla. Aug. 17, 2023). However, numerous courts across the country have upheld the constitutionality of the felon-in-possession statute after *Bruen*, including three recent Southern District of New York decisions which held that the government has established a sufficient historical tradition to uphold the legitimacy of Section 922(g)(1). *See United States v. White*, No. 23-CR-00140, 2023 WL 6066201, at *6 (S.D.N.Y. Sept. 18, 2023) (The government established a "well-established and historical analogue" for Section 922(g)(1)); *United States v. Davila*, No. 23-CR-00292, 2023 WL 5361799, at *3 (S.D.N.Y. Aug. 22, 2023) ("The Government has . . . met its burden of demonstrating a historical tradition of firearms regulation that is sufficiently analogous to § 922(g)(1) to uphold the statute's legitimacy); *United States v. Patterson*, No. 19-CR-00231, Sept. 9, 2022 Minute Entry; *see also United States v. Jackson*, 69 F.4th 495, 501-06 (8th Cir. 2023). This Court agrees with Judge Román's, Rakoff's, and Seibel's conclusion in that regard.

[3] Indeed, six justices in *Bruen* expressed support for the bar on felons possessing firearms. *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, *J.*, joined by Roberts, *C.J.*, concurring) ("underscore[ing]" that the majority opinion was limited by the proposition that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations," including the "longstanding prohibitions on the possession of firearms by felons . . ." discussed in *Heller* and *McDonald*); *id.* at 2157 (Alito, *J.*, concurring) (*Bruen* does not "disturb[] anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns"); *id*. at 2189 (Breyer, *J.*, joined by Sotomayor and Kagan, *JJ*., dissenting) ("I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding" permitting felons to be prohibited from possessing firearms). Further, two additional justices came to the same conclusion just two years prior to *Bruen*. S*ee N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1540-41 (2020) (Alito, *J*., joined by Thomas and Gorsuch, *JJ.*, dissenting). Therefore, eight of the sitting justices in *Bruen* have explicitly reaffirmed the holdings of *Heller* and *McDonald* with respect to the constitutionality of the felon-in-possession statute.

Accordingly, this Court is obligated to follow *Bogle*. Section 922(g)(1) remains constitutional in the wake of *Bruen* and Defendant's facial challenge is denied.

B. <u>As-Applied Challenge to Section 922(g)(1)</u>

Defendant also argues that Section 922(g)(1) is unconstitutional as applied to Defendant. As a threshold matter, while the Second Circuit has not addressed whether Section 922(g)(1) is subject to an as-applied challenge, the Eighth Circuit found Section 922(g)(1) constitutional in all of its applications and thus foreclosed as-applied challenges. *See Jackson*, 69 F.4th at 502 (finding after *Bruen*, "that there is no need for felony-by felony litigation regarding the constitutionality of § 922(g)(1)"); *see also United States v. Sternquist*, No. 22-CR-00473, 2023 WL 6066076, at *6 (E.D.N.Y. Sept. 15, 2023) ("[I]n *United States v. Jackson*, the Eighth Circuit declined the defendant's invitation to consider his personal history to determine the statute's validity as applied to him and, instead, upheld § 922(g)(1), both facially and as applied to nonviolent felons . . . This Court concurs with the Eight Circuit's analysis.").

In any event, Defendant's as-applied challenge to Section 922(g)(1) fails.[4] Defendant's prior felony convictions, which are punishable by a term of imprisonment exceeding one year, place him "squarely within [§] 922(g)(1)." *Sternquist*, 2023 WL 6066076 at *5. Defendant's arguments about the staleness of his felony convictions, which occurred more than fourteen years ago, and the fact that no physical injuries resulted from his conduct are unavailing. (Reply at 2-

---

[4] Several other courts have rejected as-applied challenges to Section 922(g)(1). *See e.g., Hamilton v. Pallozzi*, 848 F.3d 614, 626-27 (4th Cir. 2017); *United States v. Rozier*, 598 F.3d 768, 770-71 (11th Cir. 2010); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009); *Medina v. Whitaker*, 913 F.3d 152, 155 (D.C. Cir. 2019) ("no circuit has held [§ 922(g)(1)] unconstitutional as applied to a convicted felon") (collecting cases); *Zherka v. Garland*, 593 F. Supp. 3d 73, 80 (S.D.N.Y. 2022) ("[T]his Court, guided by the Second Circuit and a chorus of other courts of appeals, holds that the application of Section 922(g)(1) to individuals convicted of non-violent financial felonies . . . does not impinge upon conduct protected by the Second Amendment."); *see also Davila*, 2023 WL 5361799, at *5; *United States v. Warren*, No. 22-CR-00231, 2023 WL 5978029, at *8 (E.D.N.Y. Sept. 14, 2023).

3). Defendant cites no support for the suggestion that the application of Section 922(g)(1) changes based on the temporal proximity of the felony conviction to the unlawful possession of a firearm or whether injuries resulted from the conduct. Accordingly, Section 922(g)(1) is not unlawful as applied to Defendant.

Moreover, this Court is not persuaded by Defendant's reliance on *Range v. Attorney General*, 69 F.4th 96, 106 (3d Cir. 2023), a non-binding decision out of the Third Circuit which sustained a post-*Bruen* constitutional challenge to § 922(g)(1) as applied to an individual with a prior nonviolent felony. *See Sternquist*, 2023 WL 6066076 at *6 (declining Defendant's invitation to follow *Range* in part because it "is not binding in this Circuit" and "is an outlier amongst courts across the country analyzing post-*Bruen* constitutional challenges to § 922(g)(1)."). Regardless, this matter is factually distinguishable from *Range* given that Defendant's prior offense involved burglary with a weapon, a serious state felony, and *Range* involved a "food stamp fraudster" who pled guilty to a state law misdemeanor. (*Id.*).

Defendant's as-applied challenge to Section 922(g)(1) therefore fails, and Defendant's motion to dismiss the indictment is, accordingly, denied.

II.     Motion to Suppress

Defendant also moves to suppress "any and all evidence obtained and derived from the seizure [of Craft's vehicle on April 20, 2022]." (Def. Br. at 11). The motion to suppress presents two considerations: (1) whether the stop of Defendant's vehicle was an unreasonable seizure; and (2) whether the search of Defendant's vehicle was an unlawful search.

A.  The Car Stop Was Constitutional

Defendant argues that the stop of his vehicle on April 20th constitutes a violation of the Fourth Amendment's protection against unreasonable seizures. (Def. Br. at 8). The Fourth

7

Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. As that "text makes clear, the concept of reasonableness is the touchstone of constitutionality of a governmental search. What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *MacWade v. Kelly*, 460 F.3d 260, 267-68 (2d Cir. 2006) (internal citations and quotation marks omitted).

*Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) governs this situation. Under *Terry*, an officer may stop a vehicle when the officer has reasonable suspicion of criminal activity. Reasonable suspicion "requires more than a hunch" and "is satisfied as long as authorities can point to specific and articulable facts which, taken together with rational inferences from those facts, provide a particularized and objective basis for suspecting legal wrongdoing." *United States v. Patterson*, 25 F.4th 123, 136 (2d Cir. 2022) (internal citations and quotation marks omitted). Proof of reasonable suspicion requires less than a preponderance of the evidence. *See Navarette v. California*, 572 U.S. 393, 397 (2014).

As discussed in greater detail *supra*, NYSP troopers observed Defendant driving a vehicle on April 20th which had a piece of paper in the license plate holder that read "SOVEREIGN CITIZEN USC ART. SEC. 242." (Compl. ¶ 3(d)). The operation of a motor vehicle without proper license plates is a traffic infraction under New York law. N.Y. Veh. & Traf. Law § 402(1)(a), (b)(i), (2); *see also id.* § 155. The NYSP troopers therefore had reasonable suspicion to stop Defendant's vehicle because they observed him committing a traffic infraction. *See United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015) ("Traffic stops are presumptively reasonable under the Fourth Amendment if the officer has probable cause to believe that a traffic infraction has

occurred . . . If an officer has observed a traffic violation, his actual motivation for stopping the vehicle is irrelevant to whether the stop is constitutionally reasonable."). Additionally, Craft refused to provide a driver's license during the stop, which adds to the NYSP trooper's reasonable suspicion after they stopped Defendant's vehicle.

While Defendant concedes that observance of a traffic violation constitutes reasonable suspicion for a traffic stop, he argues that the stop violates the Fourth Amendment because it was prolonged. (Def. Br. at 8). However, the video evidence makes clear that the lengthy duration of the stop resulted from Defendant being uncooperative and refusing to abide by lawful directions, and not because of any action by the NYSP troopers. Defendant's repeated refusals to exit the vehicle eventually forced the NYSP troopers to break the window to remove him from the car. Accordingly, any prolonging of the stop was a direct result of the Defendant's actions and does not make the stop unlawful.

Moreover, and separately, at the time of the stop, the officers had probable cause to arrest Defendant for federal felony weapons offenses. As detailed *supra*, NYSP troopers had approached Defendant on April 17th under the mistaken belief that he was involved in a hit-and-run car collision. The complainant reported to the officers that Defendant had exited his home carrying a shotgun but had not made any threatening movement or pointed the firearm. Defendant confirmed that evening that he was the individual who was seen carrying a shotgun. At some point after the April 17th encounter and before the April 20th arrest, NYSP troopers conducted a background check and learned that Defendant had a previous felony conviction. Defendant does not argue that the background check itself was unlawful. Given that the NYSP troopers involved in the stop on April 20th were aware that he had previous felony convictions and that he had possessed a shotgun days before, they also had probable cause at the time of the stop to arrest Defendant. Defendant's

unlawful possession of a shotgun therefore provided an independent basis on which to affect the stop.

Ultimately, reasonable suspicion requiring less than a preponderance of the evidence, the Court finds that the NYSP troopers had sufficient basis to stop Defendant's vehicle given that they directly observed him committing a traffic violation. The troopers also had an independent basis to stop Defendant's vehicle given that they had probable cause to believe he had committed the offense of possessing a firearm as a convicted felon based on the witness statement, Defendant's own admission, and the results of the background check. The stop of Defendant's vehicle on April 20, 2022 was not an unreasonable seizure.

B. The Search of Defendant's Vehicle Was Constitutional

Defendant further argues that the search of the vehicle which resulted in recovering the shotgun violates the Fourth Amendment. (Def. Br. at 10). "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Weaver*, 9 F.4th 129, 138(2d Cir. 2021) (internal quotation marks omitted). One such exception is the automobile exception. Under the automobile exception, law enforcement "may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").

Defendant informed the NYSP troopers as he was being arrested that the shotgun was located inside his van. Knowledge that the shotgun was in the van is sufficient basis for the troopers to search the vehicle without a warrant, pursuant to the automobile exception. *See Gaskin*, 364

10

F.3d at 457 (finding a warrantless search of a vehicle permissible where agents had probable cause to believe that the vehicle "contained incriminating evidence against [defendant] in the form of guns, cell phones, and cash").

Additionally, the NYSP troopers were permitted to remove property from the vehicle because they were planning to impound it after arresting Craft. *See Illinois v. Lafayette*, 462 U.S. 640, 646 (1983) (finding it is "entirely proper for police to remove and list or inventory property found . . . in the possession of an arrested person who is to be jailed"). The search of Defendant's vehicle was constitutional.

Accordingly, the seizure of the Shotgun from the van was permissible, and Defendant's motion to suppress the evidence is denied.[5]

## CONCLUSION

For the foregoing reasons, Defendant's motions to dismiss the indictment and to suppress evidence resulting from the seizure and search of his vehicle are DENIED.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 19.

---

[5] "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Cantoni*, No. 19-4358-CR, 2022 WL 211211, at *3 (2d Cir. Jan. 25, 2022) (quoting *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (alteration in original)). Defendant argues that the circumstances under which he was stopped and arrested warrant an evidentiary hearing (Reply at 6) but does not identify specific facts that are in dispute nor submit an affidavit contesting any facts that were submitted. Therefore, an evidentiary hearing is unnecessary because of the absence of any "contested issues of fact that must be resolved in order for this Court to rule on [the] motion to suppress." *United States v. Holt*, No. 21-CR-00080, 2021 WL 5281366, at *2 (D. Conn. Nov. 12, 2021); *see also United States v. Merced*, No. 19-CR-00832, 2021 WL 5647827, at *11 (S.D.N.Y. Nov. 30, 2021). In any event, the facts here are clear as a bell and no hearing is warranted.

As noted during the September 20, 2023 conference, time has been excluded under the Speedy Trial Act through the date of the final pretrial conference, which is scheduled for October 5, 2023 at 10:00 a.m. in Courtroom 520.

**SO ORDERED.**

Dated: White Plains, New York
September 25, 2023

_____
Philip M. Halpern
United States District Judge