UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

CHRISTOPHER CRAFT,

Defendant.
--------------------------------------------------------X

**OPINION AND ORDER**

23-cr-00178 (PMH)

PHILIP M. HALPERN, United States District Judge:

The United States Probation Office ("Probation Office") alleges in the Third Amended Violation of Supervised Release Report and Petition (the "VOSR Petition"), dated March 16, 2026, eight instances when Defendant Christopher Craft ("Defendant" or "Mr. Craft") violated the conditions of his supervised release. The Government stated its intention to pursue Specifications 1, 2, 5, 6 and 8. (Doc. 130). On July 20, 2026, the Court held an evidentiary supervised release revocation hearing to resolve the five alleged violations of supervised release. (*See* July 20, 2026 Min. Entry). At the conclusion of the hearing, the Court reserved decision. Based upon the parties' written submissions, the testimony adduced at the hearing, and for the reasons set forth below, the Court finds the Government has met its burden of proving the supervised release violations charged in Specifications 1, 2, 5, 6 and 8.

## BACKGROUND

### I. Defendant's Pre-Supervision History

Defendant was convicted after a jury trial of one count of possessing a firearm after a felony conviction and one count of possessing ammunition after a felony conviction, both in violation of 18 U.S.C. § 922(g)(1). (*See* Oct. 19, 2023 Min. Entry). On March 28, 2024, the Court imposed a concurrent sentence on each count of 24 months of imprisonment, to be followed by three years of supervised release. Defendant's supervised release terms included that he: (1) "not commit

another federal, state or local crime;" (2) "notify the probation officer within 72 hours" after an arrest; and (3) "participate in an outpatient mental health treatment program approved by the United States Probation Office." (Doc. 72, "Judgment," at 3-5). The Second Circuit affirmed the Judgment. (Doc. 135).

II. Defendant's History While on Supervision

On February 14, 2025, Defendant was released from federal custody and his three-year term of supervised release commenced in the Southern District of New York. (*See* VOSR Petition). On January 7, 2026, the Probation Office issued its first VOSR Petition. On January 21, 2026, Defendant failed to appear in Court for his initial appearance on the first VOSR Petition. (*See* Jan. 21, 2026 Min. Entry). On February 19, 2026, Defendant again failed to appear for a scheduled court conference. (*See* Feb. 19, 2026 Min. Entry). Thereafter, a warrant of arrest was issued and on March 4, 2024, Magistrate Judge Andrew Krause ordered Defendant detained based on risk of flight. (*See* Mar. 4, 2026 Min. Entry).

On April 7, 2026, Daniel Hochheiser, Esq, Defendant's stand-by counsel, requested that substitute stand-by counsel be appointed for Defendant. (Doc. 95). On April 10, 2026, Magistrate Judge Victoria Reznik relieved Mr. Hochheiser as stand-by counsel and appointed Andrew Patel, Esq. as stand-by counsel. (*See* Apr. 4, 2026 Min. Entry). Defendant declined to attend that change of counsel hearing. (*Id.*).

The Court scheduled a revocation hearing for June 3, 2026, which was rescheduled to June 10, 2026. (*See* Apr. 23, 2026 Min. Entry; Doc. 103). On May 18, 2026, Defendant confirmed that he did not want Mr. Patel to represent him at the revocation hearing and the Court directed that Mr. Patel remain as stand-by counsel. (*See* May 18, 2026 Min. Entry). The Court rescheduled the revocation hearing to July 20, 2026 at Defendant's request. (Docs. 112, 113).

On June 8, 2026, Defendant moved to: (1) dismiss Specifications 1, 2, 3, 4, 5 and 8; (2) deny the Government's request for a hearing pursuant to *Faretta v. California*, 422 U.S, 806 (1975); (3) release him from custody; and (4) recuse the undersigned. (Doc. 114).[1] Between January 7, 2026 and March 16, 2026, the Probation Office issued three VOSR Petitions with the third petition listing eight specifications. On July 13, 2026, the Government filed a letter stating that it intended to pursue five violations and set forth the evidence, witnesses, and exhibits that it intended to present at the hearing. (Doc. 130).

III. The Revocation Hearing

Defendant refused to attend the revocation hearing on July 20, 2026 and the Court issued a use of force order to compel his attendance. (Tr. at 2, 11-12; Doc. 134).[2] Defendant then refused to enter the courtroom, necessitating the U.S. Marshals to bring him into the courtroom, and he then refused to answer the Court's questions regarding whether he wanted to participate in the revocation hearing. (Tr. at 2-3, 11-13). Therefore, the Court concluded that Defendant waived his right to participate in the revocation hearing pursuant to Federal Rule of Criminal Procedure 43 and directed the U.S. Marshals to remove Defendant to the holding cell outside of the courtroom to listen to the proceeding. (*Id.* at 3, 9, 11-12).

At the start of the revocation hearing, the Court denied Defendant's motion to dismiss Specifications 1, 2, 3, 4, 5 and 8; found Defendant competent to represent himself as he requested; denied his request for bail; and denied his request for recusal. (*Id.* at 3-10). The Court dismissed Specifications 3, 4 and 7 as the Government was not pursuing those specifications. (*Id.* at 6-7).

---

[1] Citations to the parties' filings correspond to the pagination generated by ECF.

[2] Citations to the July 20, 2026 hearing transcript will be cited herein as "Tr. __". Citations to the exhibits admitted at the hearing will be cited as "Hearing Ex. __".

The Government called three witnesses during the hearing; (1) Erica Cudina, United States Probation Officer Specialist; (2) Brett Stevens, a licensed mental health counselor at KB Forensics; and (3) Minesh Patel, owner of the Inn at Hyde Park. (*Id.* at 14, 25-26, 35-36). Probation Officer Cudina started supervising Defendant on February 14, 2025. (*Id.* at 14). She directed that Defendant attend a mental health treatment appointment at the Dutchess Clinic in Poughkeepsie, New York ("Dutchess Clinic") on November 19, 2025 so that he could undergo a mental health evaluation. (Tr. at 16-17; GX 301, 302). Defendant did not attend the November 19, 2025 appointment as directed. (*Id.* at 18). Defendant informed Probation Officer Cudina that he did not attend the appointment due to transportation issues. (Tr. at 18-20; GX 102). Defendant also failed to attend his rescheduled appointment at the Dutchess Clinic on November 24, 2025 due to transportation issues. (Tr. at 20-21; GX 103).

Defendant attended his second rescheduled appointment at the Dutchess Clinic on December 15, 2025. (Tr. at 21-22). Defendant did not, however, complete the mental health evaluation at the clinic as directed by Probation Officer Cudina. (*Id.* at 22). Defendant informed Probation Officer Cudina that the line of questioning was a violation of his rights, he did not need medication, and he did not need treatment. (*Id.*). Defendant left the appointment without participating in the mental health evaluation. (*Id.*).

Probation Officer Cudina subsequently directed Defendant to attend a mental health appointment at KB Forensics in Poughkeepsie, New York on February 9, 2026. (*Id.* at 22-23). Defendant did not complete a mental health evaluation at KB Forensics because he expressed concerns with HIPAA and confidentiality, he only wanted to speak with the highest-level therapist at the practice, and he became unruly at the appointment. (*Id.* at 23-24).

Thereafter, a detective at the Hyde Park Police Department informed Probation Officer Cudina that Defendant was arrested on February 12, 2026. (*Id.* at 24). Defendant did not notify Probation Officer Cudina within 72 hours of his arrest. (*Id.* at 24-25).

The Government's next witness was Mr. Stevens, a licensed mental health counselor at KB Forensics. (*Id.* at 25-26). KB Forensics is an outpatient community mental health provider who works primarily with adult men involved in the criminal justice system. (*Id.*). Mr. Stevens was assigned to conduct Defendant's mental health evaluation on February 9, 2026. (*Id.* at 27). Defendant arrived 20 minutes late to the appointment due to transportation issues. (*Id.*). Mr. Stevens informed Defendant that prior to discussing his personal history they needed to review the practice's standard consent forms, including a confidentiality agreement, release of information and evaluation fee form. (*Id.* at 28-29). Mr. Stevens reviewed the forms with Defendant. (*Id.* at 29).

KB Forensics' standard confidentiality form provides that: "Staff at KB Forensics works as a team. Your therapist may consult with other therapy staff to provide the best possible care. These consultations are for professional and training purposes." (GX 202). Defendant objected to his personal information being shared with anyone expect the therapist conducting his mental health evaluation, the Probation Office and the Court. (*Id.* at 30-31). Mr. Stevens informed Defendant that the confidentiality provision was a standard practice and all staff at KB Forensics maintain confidentiality. (*Id.* at 31). Defendant stated that he would not comply with the confidentiality policy. (*Id.*). Defendant separately spoke with Probation Officer Cudina and his attorney who both informed him that the confidentiality policy was a standard practice. (*Id.* at 31-33). Probation Officer Cudina further informed Defendant that he would be violating his release conditions if he did not complete the mental health evaluation. (*Id.* at 31-32).

Defendant became combative and hostile during the meeting. (*Id.* at 33). Defendant spoke in a loud voice and used numerous expletives. (*Id.*). Mr. Stevens' supervisor stopped by the office to make sure there were no issues because Defendant's demeanor caused her to be concerned about the safety of other people in the building. (*Id.*). Mr. Craft stated that he would not proceed without speaking to the clinical director who was not in the building. (*Id.*). Ultimately, Defendant did not sign the confidentiality agreement and Mr. Stevens could not complete the mental health evaluation. (*Id.* at 33-34).

The Government's final witness was Mr. Patel. (*Id.* at 35). Defendant resided at the Inn at Hyde Park in August 2025 based on a placement through the Department of Community and Family Services. (*Id.* at 36). Residents placed at the motel by social services must follow certain rules, such as no visitors after 9:00 p.m. (*Id.* at 36-37).

The Department of Community and Family Services cancelled Defendant's room at the motel in January 2026 after he was arrested. (Tr. at 37-38; GX 203). Defendant subsequently returned to the motel and stayed with another guest, Roseanna Loebbaka, who was also placed at the motel by social services. (Tr. at 38-39). Ms. Loebbaka was not permitted to have overnight guests in her room. (Tr. at 39-41; GX 203). Mr. Patel went to Ms. Loebbaka's room in February 2026. (Tr. at 42). Mr. Patel observed Defendant in her room. (*Id.*). Mr. Patel informed Defendant that he had to leave the room by 9:00 p.m. (*Id.* at 42-43). Defendant, in response, took a step toward Mr. Patel and told him that if he did not leave the room Defendant would break his neck. (*Id.*). Mr. Patel believed that Defendant's threat was serious and that Defendant would hurt him so he left the room. (*Id.*). Defendant remained at the motel for another week until law enforcement arrested him on February 12, 2026. (*Id.* at 44).

## ANALYSIS

The Government bears the burden of proving, by a preponderance of the evidence, that Defendant violated the conditions of his supervised release. *See* 18 U.S.C. § 3583(e)(3); *United States v. Peguero*, 34 F.4th 143, 152 (2d Cir. 2022).[3] "The preponderance standard requires proof that the defendant's violation of supervision was more likely than not." *United States v. Edwards*, 834 F.3d 180, 199 (2d Cir. 2016). The Government has met its burden of proving the supervised release violations charged in Specifications 1, 2, 5, 6 and 8.

I. Specification 1 – Failure to Participate in Mental Health Treatment on December 15, 2025

Specification 1 charges Defendant with violating the conditions of his supervised release by failing to participate in court-ordered mental health treatment on or about December 15, 2025. Defendant attended his rescheduled appointment at the Dutchess Clinic on December 15, 2025 but failed to complete the mental health evaluation. (Tr. at 21-23). Defendant informed Probation Officer Cudina that the line of questioning was a violation of his rights, he did not need medication, and he did not need treatment. (*Id.*). Therefore, Defendant left the appointment without participating in the mental health evaluation. (*Id.*).

Defendant argues that he did not violate the specification because he reported to the Dutchess Clinic as directed by Probation Officer Cudina on December 15, 2025 and the facility terminated the interaction with him. (Doc. 114 at 14). There is no dispute, however, that Defendant failed to participate in mental health treatment on December 15, 2025 in violation of his condition of supervised release. "Simply attending the required [treatment] sessions is insufficient in and of itself to establish compliance with the condition of his supervised release requiring him to

[3] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

participate in a . . . treatment program" because "[m]ere attendance is not participation." *United States v. Porter*, No. 03-CR-00129, 2008 WL 5377946, at *9 (E.D.N.Y. Dec. 23, 2008) (citing cases).

Defendant's participation in the mental health evaluation at the Dutchess Clinic as directed by Probation Officer Cudina was not optional. Defendant's decision to not complete the mental health evaluation constitutes a violation of his condition of supervised release to participate in mental health treatment. *See United States v. Browder*, 807 F. App'x 44, 47 (2d Cir. 2020) (affirming district court's finding that the defendant violated his condition of supervised release to participate in a sex offender treatment program where he was denied admission to the treatment program because he insisted he was innocent of the crime to which he pled guilty).

Defendant also argues that the supervised release condition requiring him to participate in mental health treatment and to take prescription medication against his will is unconstitutional. (Doc. 114 at 14). It is well established that "the validity of an underlying conviction or sentence may not be collaterally attacked in a supervised release revocation proceeding and may be challenged only on direct appeal or through a habeas corpus proceeding." *United States v. Warren*, 335 F.3d 76, 78 (2d Cir 2003). In addition, Defendant forfeited the challenge to the mental health treatment condition by failing to raise this objection in his prior appeal. *See Browder*, 807 F. App'x at 46.

For the foregoing reasons, the Court finds the Government has proven by a preponderance of the evidence that Defendant failed to participate in mental health treatment on December 15, 2025 and that he committed the violation charged in Specification 1.

II. Specification 2 – Failure to Participate in Mental Health Treatment on February 9, 2026

Specification 2 charges Defendant with violating the conditions of his supervised release by failing to participate in court-ordered mental health treatment on or about February 9, 2026. Probation Officer Cudina and Mr. Stevens credibly testified that Defendant did not complete a mental health evaluation at KB Forensics on February 9, 2026 due to his concerns with the standard confidentiality agreement. (Tr. at 23-24, 30-34). Defendant does not dispute this testimony. Defendant argues that he met with a counselor at KB Forensics on February 9, 2026, refused to sign a form to share his personal information, asked to speak with a supervisor, and then KB Forensics terminated the meeting. (Doc. 114 at 14).

Similar to Specification 1, Defendant's participation in the mental health evaluation at KB Forensics was not optional. Defendant's decision to not complete the mental health evaluation constitutes a violation of his condition of supervised release to participate in mental health treatment. Therefore, the Court finds the Government has proven by a preponderance of the evidence that Defendant failed to participate in mental health treatment on February 9, 2026 and that he committed the violation charged in Specification 2.

III. Specification 5 – Criminal Trespass in the Second Degree

Specification 5 charges Defendant with committing the state crime of criminal trespass in the 2nd degree in violation of New York State Penal Law ("NYPL") § 140.15 on or about February 12, 2026. A person is guilty of this offense when he knowingly enters, or remains, unlawfully in a dwelling. NYPL § 140.15(1); *see also People v. Jackson*, 38 A.D.3d 1052, 1053 (3d Dep't 2007). A dwelling is defined as "a building which is usually occupied by a person lodging therein at night." NYPL § 140.00(3). A motel constitutes a dwelling under the statute. *See People v. McCray*, 23 N.Y.3d 621, 625-26 (2014). An individual "knowingly enters or remains unlawfully in a

dwelling when he or she 'is not licensed or privileged to do so.'" *Jackson*, 38 A.D.3d at 1053 (quoting NYPL § 140.00(5)). "An individual is licensed or privileged to enter a dwelling when he has obtained the consent of the owner or another whose relationship to the premises gives him authority to issue such consent." *Id.* at 1053-54.

After Defendant's room at the motel was cancelled, in February 2026, Mr. Patel credibly testified he informed Defendant that he had to leave Ms. Loebbaka's room at the motel by 9:00 p.m. (Tr. at 43). Defendant remained at the motel for another week until law enforcement arrested him on February 12, 2026. (*Id.* at 44). Defendant remained unlawfully at the motel knowing that he did not have the consent of the motel owner to stay at the motel.

Therefore, the Court finds the Government has proven by a preponderance of the evidence that Defendant committed the state crime of criminal trespass in the 2nd degree charged in Specification 5.

IV. Specification 6 – Failure to Notify Probation within 72 Hours of Arrest

Specification 6 charges Defendant with violating Standard Condition No. 9 of his conditions of supervised release by failing to notify his Probation Officer within 72 hours of his February 12, 2026 arrest. Probation Officer Cudina credibly testified that Defendant did not notify her within 72 hours of his arrest. (Tr. at 24-25). Therefore, the Court finds the Government has proven by a preponderance of the evidence that Defendant committed the violation charged in Specification 6.

V. Specification 8 – Harassment in the Second Degree

Specification 8 charges Defendant with committing the state crime of harassment in the 2nd degree in violation of NYPL § 240.26 on or about February 12, 2026. "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e . . . subjects such other person to physical contact, or attempts or threatens to do the same."

NYPL § 240.26(1). "Such intent can be inferred from the act itself or from the defendant's conduct and the surrounding circumstances." *People v Caulkins*, 82 A.D.3d 1506, 1507 (3d Dep't 2011).

A person who makes a threatening statement is guilty under the statute where the statement is "serious, should reasonably have been taken to be serious, or was confirmed by other words or acts showing that it was anything more than a crude outburst." *People v. Lagano*, 39 N.Y.3d 108, 111-12 (2022). "Put another way, the statute criminalizes a true threat, not mere angry words; hence genuine threats of physical harm fall within the scope of the statute while an outburst, without more, does not." *Id.* at 112. "A true threat is one that a reasonable person in the victim's position would consider to be an unequivocal statement of intended physical harm." *Id.*

After Defendant's room at the motel was cancelled, Mr. Patel observed Defendant in another guest's room. (Tr. 37-39). Mr. Patel informed Defendant that he needed to leave the guest's room by 9:00 p.m. (*Id.* at 42). Defendant, in response, threatened Mr. Patel with physical violence by stating that if Mr. Patel did not leave the guest's room Defendant would break his neck. (*Id.*). Defendant appeared angry, combative and took a step towards Mr. Patel when he threatened him. (*Id.* at 42-43). Mr. Patel left the room because he believed that Defendant's threat was serious and that Defendant would hurt him. (*Id.* at 43). Under these circumstances, Defendant's threat was not a mere outburst but a serious threat of specific violence. In addition, Mr. Patel reasonably believed that Defendant intended to harm him. A reasonable person in Mr. Patel's position would similarly consider Defendant's statement as a threat of intended physical harm.

Accordingly, the Court finds the Government has proven by a preponderance of the evidence that Defendant committed the state crime of harassment in the 2nd degree charged in Specification 8.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant has violated Specifications 1, 2, 5, 6 and 8 in the VOSR Petition. A sentencing hearing is scheduled for November 4, 2026 at 2:30 p.m. in Courtroom 520. It is the Government's responsibility to have the Defendant produced to the White Plains Courthouse at that time. The parties and Probation shall file sentencing submissions by October 20, 2026.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Docs. 114 and 136, and to mail a copy of this Order to Defendant at # 10515-506, MDC Brooklyn, Metropolitan Detention Center, P.O. Box 329002, Brooklyn, New York 11232.

**SO ORDERED.**

Dated: White Plains, New York
October 7, 2026

Philip M. Halpern
United States District Judge